* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. April 20, 2003 is the date of the alleged injury that is the subject of this claim.
2. The issues before the Full Commission are whether an employment relationship existed between plaintiff and defendant Jerry Sanford, whether defendant Jerry Sanford employed three or more employees on April 20, 2003, whether plaintiff is entitled to benefits under the North Carolina Workers' Compensation Act and, if so, which defendant shall provide those benefits.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is a resident of Oklahoma. On April 20, 2003, she was regularly employed as a shelter master for Northwest Domestic Crisis Shelter, where she had worked since October 2001. Plaintiff earned a salary of $22,500.00 and received health insurance, sick leave, and vacation time. Plaintiff ran the shelter from 8 a.m. to 4 p.m., Monday through Friday.
2. On April 20, 2003, plaintiff was on vacation from the Northwest Domestic Crisis Center and was present on the jobsite of defendant Jerry Sanford (hereafter "Mr. Sanford") when her hands were crushed while riding on the front of a forklift. The accident resulted in the amputation of multiple fingers on each of plaintiff's hands. Plaintiff alleges that she was an employee of Mr. Sanford on April 20, 2003, when she was injured.
3. Mr. Sanford is in the business of purchasing the contents of grocery stores to salvage and scrap their contents. Mr. Sanford's business is based in Oklahoma, but he performs work throughout the United States. On average, Mr. Sanford handles 40 to 60 jobs per year, with at least half performed solely by Mr. Sanford. Of the remainder of the jobs, half are performed by Mr. Sanford and one helper. The rest of the jobs require the use of helpers, although Mr. Sanford does not have any regular employees. Mr. Sanford has no expectation or guarantee of regular work on a consistent basis. When help is needed, Mr. Sanford calls friends and former helpers. There is no list of regular helpers and no pattern or priority that determines who is called for a particular job. Helpers are hired as contract labor or subcontractors and are paid $100.00 per day for a full day of work. Helpers either ride to the jobsite with Mr. Sanford or find their own transportation. Once at a jobsite, the workers are simply told to clean up the store. Mr. Sanford does not dictate work hours or starting and quitting times. Helpers work at their own pace, with the simple directive of "[j]ust clean the building up basically. Just empty the building."
4. On April 20, 2003, Mr. Sanford was working on two Bi-Lo grocery store jobsites in Canton and Asheville, North Carolina. Mr. Sanford had a five-person crew helping him empty the stores. All five crewmembers were paid for their work and assistance in cleaning out the two stores. This was the first time that Mr. Sanford worked in North Carolina and his first purchase of Bi-Lo stores.
5. Plaintiff is a friend of Karen Watson, who was at the time of the injury Mr. Sanford's girlfriend and one of the crew working on Mr. Sanford's North Carolina Bi-Lo jobsites. Prior to the start of the North Carolina job, plaintiff asked Ms. Watson to check with Mr. Sanford about possible work on the jobs. Mr. Sanford informed Ms. Watson that he had no work available, since he already had two full crews. Mr. Sanford never told Ms. Watson that he would hire plaintiff and never told her that he would pay plaintiff if she came along on the job. Ms. Watson believed that plaintiff hoped that, by coming along on the trip, she could receive payment for any work she might perform. Plaintiff accompanied Ms. Watson to North Carolina to get a break from her regular work since she had built up "comp time" at her employment with Northwest Domestic Crisis Shelter. Mr. Sanford agreed with Ms. Watson that plaintiff could accompany Ms. Watson to North Carolina to drive Ms. Watson's vehicle back to Oklahoma, as Ms. Watson was going on to another jobsite in Maryland with Mr. Sanford.
6. In 2002 plaintiff had accompanied Ms. Watson to another job for Mr. Sanford in Texas. According to Ms. Watson, plaintiff went along with her to keep her company. Plaintiff assisted Ms. Watson in the cleanup process and because plaintiff had helped Ms. Watson, Ms. Watson paid plaintiff $50.00 per day out of the wages she received from Mr. Sanford. Plaintiff also visited Ms. Watson on two additional jobs for which she received no money. Ms. Watson testified that plaintiff's participation in the job at the Canton store was similar to what she did on the Texas job in 2002.
7. Plaintiff traveled to North Carolina with her friend, Ms. Watson, to drive Ms. Watson's car back to Oklahoma. The trip to North Carolina was more of a vacation for plaintiff than an employment opportunity. There is no evidence that plaintiff was hired by Mr. Sanford to perform any work and in fact the evidence shows that Mr. Sanford told Ms. Watson that he already had enough help on the job and would not hire plaintiff. Plaintiff, under the circumstances, could not expect any payment for work performed, since the two parties never agreed to any employment relationship. Plaintiff was a visitor at the Canton jobsite.
8. The Full Commission gives greater weight to the testimony of Mr. Sanford and Ms. Watson than to the testimony of plaintiff as to whether she had an employment relationship with Mr. Sanford. Plaintiff was not working for Mr. Sanford when she was injured and Mr. Sanford did not regularly employ three or more employees. Mr. Sanford did not communicate or contract with plaintiff about working on one of his jobsites and did not pay plaintiff for any work performed in North Carolina. Therefore, plaintiff was not an employee of Mr. Sanford on April 20, 2003.
9. Cecil Brown, manager of surplus equipment for defendant Bi-Lo, Inc., first met Mr. Sanford at the Bi-Lo store in Canton, North Carolina on April 16, 2003. Mr. Brown had contracted with Graf Auction Company to auction the equipment in the two North Carolina stores and Graf Auction Company informed Mr. Brown that Mr. Sanford agreed to purchase the equipment for $2,000.00, per store. Defendant Bi-Lo, Inc. did not contract directly with Mr. Sanford to purchase the equipment from the two stores. Defendant Bi-Lo, Inc., did not provide Mr. Sanford with any instructions on how to clean out the stores and had no control over who Mr. Sanford hired to assist with the task. Mr. Sanford arranged to transport materials from the stores to the scrap yard, rented dumpsters for disposal of trash, and brought his own tools and equipment to aid in the emptying of the stores. The relationship between defendant Bi-Lo, Inc., and Mr. Sanford created by the buy/sell agreement was that of purchaser and seller, not general contractor and subcontractor.
10. Mr. Brown had no knowledge of plaintiff's presence at either jobsite and had no knowledge of her injury on April 20, 2003. There is no evidence that plaintiff had any contact with defendant Bi-Lo, Inc. Thus, the Full Commission finds that there was no employment relationship between plaintiff and defendant Bi-Lo, Inc. and that Mr. Sanford was not a subcontractor of defendant Bi-Lo, Inc.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. An injured person is entitled to compensation under the North Carolina Workers' Compensation Act only if she was an employee of the alleged employer at the time of the injury. Lucas v. Stores,289 N.C. 212, 221 S.E.2d 257 (1976); Hart v. Motors, 244 N.C. 84,92 S.E.2d 673 (1956). Under the Act, an "employee" is defined as every person engaged in an employment under any appointment or contract of hire, express or implied, oral or written, but excluding casual employment that is not in course of the business of the alleged employer. N.C. Gen. Stat. § 97-2(2). In order to determine whether an employment relationship exists, an inquiry must be made into the terms of the agreement between the parties and what relationship between the parties was created by the contract.Askew v. Tire Co., 264 N.C. 168, 141 S.E.2d 280 (1965). Because the Act only applies where the employer-employee relationship exists, the question of whether it existed at the time of the accident is jurisdictional. Carter v. Frank Shelton, Inc., 62 N.C. App. 378,303 S.E.2d 184 (1983).
2. Plaintiff has the burden of proving that an employer-employee relationship existed. Lucas v. Stores, supra. In the present case, plaintiff did not prove the existence of any employment agreement with either Mr. Sanford or defendant Bi-Lo, Inc. Plaintiff did not have any conversations with Mr. Sanford regarding his hiring her to perform any work on the North Carolina jobsites and had no reasonable expectation of payment for the performance of any work at those jobsites. See,Hollowell v. Department of Conservation and Development, 206 N.C. 206,173 S.E.2d 603 919 (1934). Further, Mr. Sanford did not regularly employ three or more employees. "Regularly employed" has been defined as the employment of the same number of persons throughout the period in question with some constancy. Durham v. McLamb, 59 N.C. App. 165,296 S.E.2d
3 (1982). Mr. Sanford had no pattern of regular work or employment of three or more workers on a consistent basis. Additionally, there is no evidence that plaintiff had any contact or employment relationship with defendant Bi-Lo, Inc., at any time. Thus, plaintiff did not have an employment relationship with either Mr. Sanford or defendant Bi-Lo, Inc., on April 20, 2003 and the Commission does not have jurisdiction over this claim. N.C. Gen. Stat. § 97-2(2); Carter v. Frank Shelton,Inc., supra.
3. In addition, N.C. Gen. Stat. § 97-19 is not applicable to the relationship between Mr. Sanford and defendant Bi-Lo, Inc. Graf Auction Company contracted with defendant Bi-Lo, Inc., to auction equipment from two of its stores, and Mr. Sanford purchased the equipment and agreed to remove it from the two Bi-Lo stores. Mr. Sanford was not a subcontractor of defendant Bi-Lo, Inc. The evidence establishes that, at most, Mr. Sanford was an independent contractor. N.C. Gen. Stat. § 97-19.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff did not have an employment relationship with either defendant Jerry Sanford or defendant Bi-Lo, Inc. Thus, the North Carolina Industrial Commission does not have jurisdiction over this case.
2. Therefore, under the law, this claim must be and is hereby DENIED.
3. Each side shall pay its own costs.
This 14th day of December, 2006.
S/ _________________________________ LAURA KRANIFELD MAVRETIC, Commissioner
CONCURRING:
 S/ ________________________________ CHRISTOPHER SCOTT, COMMISSIONER,
 S/ _______________________________ DIANNE C. SELLERS, COMMISSIONER